UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 09-cr-00154-01 |
| VERSUS | JUDGE HICKS |
| AL DEANGELO COOPER | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Before the court is a **Motion to Suppress (Doc. 22)** filed by Defendant. An evidentiary hearing was held on October 5, 2009. For the reasons set forth below, it is recommended that Defendant's motion be **denied**.

**Facts**

The following facts were established at the hearing. On June 24, 2009, Lt. Daniel Weaver of the Minden, Louisiana Police Department received information from a cooperating source (whom he had arrested on drug charges earlier that day) that Defendant planned to go to the Greyhound Bus Station in Shreveport, Louisiana between 11:00 a.m. and 1:00 p.m. that day to obtain approximately seven ounces of crack cocaine. The source told Lt. Weaver that the cocaine was to arrive via bus from Dallas, Texas. The cooperating source, identified during the suppression hearing as Kenny Lee, was a well-known drug dealer in the Minden area.

Lt. Weaver contacted DEA Task Force Agent Hank Haynes and relayed Lee's information to him. Lt. Weaver also provided Agent Haynes with a description of the Defendant's vehicle, which was a white 1998 GMC Yukon bearing Louisiana license plate number SCS906. Agent Haynes (who is from Minden and had worked as a police officer in Minden) has known Lt. Weaver for many years and has received tips from him in the past. Agent Haynes has always found Lt. Weaver's information to be reliable.

Lee also told Lt. Weaver, and Weaver passed along to Agent Haynes, that Delanceo Tyronne Brown was the source of Defendant's drugs. Lt. Weaver and Agent Haynes knew Brown and Defendant, because they arrested both of the men previously for drug offenses. Defendant was a resident of Minden at the time of the events at issue in this case. Brown currently lives in Dallas, Texas.

Agent Haynes and several other law enforcement officers set up surveillance at the Shreveport bus station. Agent Haynes observed bus number 6058 arrive from Dallas at or around the expected time. (The officers had been notified that the bus had been delayed slightly.) At about that same time, Agent Haynes observed Defendant arrive at the bus station in his white GMC Yukon. Agent Haynes confirmed that the license plate number matched the number provided to him by Lt. Weaver. Agent Haynes then lost sight of Defendant, but other officers saw Defendant park his Yukon in the bus station parking lot and then walk inside the bus station.

Once inside the bus station, Defendant sat down in a row of seats for a few seconds, then he exited the bus station and began walking back to his vehicle. Richard Rogers, who had exited bus number 6058, walked closely behind Defendant. Rogers had a white paper bag (identified at the hearing as a "chicken sack") in his hand. He had no luggage or other bags with him.

The officers believed that all of the information provided by Lt. Weaver had been corroborated, and they believed they had probable cause that Rogers was carrying approximately seven ounces of crack cocaine on his person or in the white bag. To avoid a potentially dangerous vehicle pursuit, the officers decided to make contact with Defendant and Rogers, both of whom had entered the Yukon, and the take-down signal was given.

Officers quickly approached both sides of Defendant's vehicle. Defendant was removed from the driver side door, and Rogers was removed from the passenger side door. Both men were handcuffed for officer safety, and their <u>Miranda</u> rights were read to them.

Sgt. Lloyd Porter, Supervisor of Narcotics for the Louisiana State Police in Shreveport, was among the officers providing support and surveillance for the operation. When the take-down signal was given, Sgt. Porter approached the passenger side of the vehicle and removed Rogers from the vehicle. Sgt. Porter looked under and around the vehicle for the white bag. Porter leaned into the vehicle from the open passenger-side front door and looked on the floorboard, dash, and under the seat for the white bag. He found the white bag under the passenger seat of Defendant's vehicle.

Sgt. Porter removed the bag, which was partially open, from the vehicle. He saw a large white chunk wrapped in cellophane. Sgt. Porter gave the bag to Agent Haynes. The substance field tested positive for cocaine. The bag was later determined to contain approximately 9.6 ounces of powder and crack cocaine.

Defendant and Rogers were arrested and were administered their <u>Miranda</u> rights a second time. Both Defendant and Rogers were charged with drug offenses in this case. Rogers also filed a motion to suppress, but he did not pursue the motion to a hearing, and he entered a guilty plea on October 1, 2009. In the written factual basis for his guilty plea, Rogers admitted that he was acting as a courier of the drugs for Defendant. Doc. 31-3.

**Law and Analysis**

Defendant contends that the officers lacked probable cause to stop Defendant and Rogers as they exited the bus station and entered Defendant's vehicle. Defendant also argues that once Defendant and Rogers were removed from Defendant's vehicle, there was no danger to the officers or exigent circumstances that justified a warrantless search of Defendant's vehicle. Defendant points out that the United States Court House is directly across the street from the Greyhound Bus Station in Shreveport, and the officers could have easily walked across the street and requested a warrant to search the vehicle.

The undersigned finds that the officers had probable cause to stop Defendant and Rogers and search Defendant's vehicle. That probable cause was based on the following uncontroverted facts that were established at the hearing:

- The information provided by Lt. Weaver to Agent Haynes was detailed and precise.

- Lt. Weaver's confidential source, Kenny Lee, was a known drug dealer who had been arrested earlier that same day by Lt. Weaver.

- The information pinpointed the exact drug that was to be obtained by the Defendant - - crack cocaine.

- The information pinpointed the location where the drugs would arrive in Shreveport - - the Greyhound Bus Station.

- The information pinpointed a specific date and time frame in which the drugs would arrive - - between 11:00 a.m. and 1:00 p.m. on June 24, 2009.

- The information pinpointed the origin of the bus carrying the drugs - - Dallas, Texas.

- The information pinpointed Defendant as the person who would arrive to pick up the drug courier.

- The information pinpointed the vehicle (white GMC Yukon) that Defendant was driving as well as his license plate number (SCS906).

The above detailed information was subsequently corroborated by Agent Haynes and Sgt. Porter as they observed:

- Defendant arrived at the bus station in his white Yukon at the same time bus 6058 arrived from Dallas.

- The license plate number on the white Yukon driven by Defendant matched the information provided by Lt. Weaver.

- Defendant entered the Greyhound Bus Station for a few seconds, then returned to his vehicle followed closely by Rogers.

- Rogers disembarked the bus from Dallas carrying only a white bag in his hand and, immediately afterward, closely followed Defendant to Defendant's vehicle.

- Rogers and Defendant entered Defendant's vehicle as they prepared to leave the bus station.

Several additional facts are also relevant to the court's probable cause finding. Agent Haynes has known Lt. Weaver for many years, and Haynes had obtained tips regarding narcotics from him in the past. Agent Haynes has always found Lt. Weaver's information to be reliable. The informant had told Lt. Weaver that the source of Cooper's drugs was Delanceo Tyronne Brown, a former Minden resident who now lived in Dallas. Agent Haynes had personally arrested Brown and Cooper on previous drug charges. Agent Haynes knew that both Cooper and Brown were drug dealers. This information, coupled with the officers' personal corroboration of the information supplied by Lt. Weaver, contributed to the veracity and reliability of the informant's tip and provided probable cause for the stop and search.

The critical issue in this case is whether the officers acted appropriately in conducting a warrantless search of Defendant's vehicle for the white bag or whether, as Defendant contends, they should have obtained a search warrant. Until recently, the law was that a police officer who had made a lawful custodial arrest of the occupant of a vehicle was permitted to search the passenger compartment of the vehicle as a contemporaneous incident of that arrest. New York v. Belton, 453 U.S. 454, 460 (1981). However, in Arizona v. Gant, 129 S.Ct. 1710 (2009), the Supreme Court rejected Belton's broad formulation of the incident to arrest rule as it applies to vehicles.

In Gant, the Court stated that a search of a vehicle incident to the arrest of its recent occupant is governed by a two-prong inquiry. The search is permissible if (1) the arrestee is

unsecured and within reaching distance of the passenger compartment at the time of the search; or (2) it is reasonable to believe that the vehicle contains evidence of the offense of arrest. 129 S.Ct. at 1723. The Court concluded that the search in that case failed both prongs of the test because Gant was handcuffed and locked in a patrol car at the time officers searched his vehicle, and the officers had no reason to believe that they would find evidence of the crime of the arrest - - driving on a suspended license - - inside Gant's car.

In this case, however, it was reasonable for the officers to believe that Defendant's vehicle contained evidence of the drug charges for which the arrest was ultimately made. As explained above, the officers had probable cause to believe that Rogers was transporting cocaine from Dallas to Shreveport to deliver to Defendant, and that Rogers had the cocaine either in the white bag or concealed on his person at the time he entered Defendant's vehicle. Therefore, it was reasonable for the officers to believe that the vehicle contained evidence of the offense of arrest, specifically, possession of approximately seven ounces of cocaine.

Even if the search was not justified as a search incident to arrest under <u>Gant</u>, the search of the car was still supported by probable cause. At a minimum, the officers had reasonable suspicion to conduct a <u>Terry</u> stop on both Defendant and Rogers. The totality of the circumstances, including the information provided by the informant and Lt. Weaver, together with the fruits of the officers' own surveillance, provided reasonable suspicion to conduct an investigatory detention of Defendant and Rogers. <u>United States v. Jackson</u>, 328 Fed.Appx. 933, 936 (5th Cir. 2009). The fact that Defendant and Rogers were handcuffed during the

stop did not automatically convert the Terry stop into an arrest requiring probable cause. United States v. Johnson, 445 F.3d 793 (5th Cir. 2006). Indeed, the officers testified that they did not decide to arrest Defendant and Rogers until the white bag was recovered from under the seat of Defendant's Yukon.

The automobile exception allows police to search a vehicle if they have probable cause to believe that the vehicle contains contraband. United States v. Fields, 456 F.3d 519 (5th Cir. 2006). The officers saw Rogers carrying the white bag when he entered Defendant's vehicle. When Defendant was removed from the vehicle, he denied any knowledge of the white bag. And when Sgt. Porter removed Rogers from the vehicle, the white bag was no longer visible. By that point, the officers had probable cause to believe that the vehicle contained illegal narcotics.

**Conclusion**

The warrantless search of Defendant's vehicle, which led to the discovery of the white bag containing cocaine, was a valid search incident to Defendant and Rogers' lawful arrest. Alternatively, the search was supported by probable cause and falls within the automobile exception to the warrant requirement. In either event, the search was reasonable and did not run afoul of the Fourth Amendment. Accordingly, Defendant's **Motion to Suppress (Doc. 22)** should be **denied**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 15th day of October, 2009.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE